IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.                                      Case No.  19-cr-00365 APM

CHRISTOHER YOUNG

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

    Comes now the defendant, by and through his attorney, Richard S. Stern, to respectfully move this Honorable Court to sentence Mr. Young to fifteen (15) years in prison on count One, Sexual Exploitation of a Minor, in violation of 18 U.S.C. §2251(a), which is the mandatory minimum under the statute.  As Count Two of the Information, Second Degree Child Sexual Abuse, in violation of 22 D.C. Code §3009, we move that the Court order a five (5) year sentence to run concurrently with this sentence in Count One, to be followed by a reasonable term of supervised release on both counts with any appropriate conditions.

    As grounds therefore, we state as follows:

    1.    On August 23, 2022, the defendant pled guilty to Counts One and Two of the Superseding Information, pursuant to a written plea agreement.  Count One carries a mandatory minimum sentence of fifteen (15) years of imprisonment and a maximum sentence of thirty (30) years imprisonment; a maximum fine of $250,000, or twice the pecuniary gain or loss of the offense; a term of supervised release of at least five years to life, pursuant to 18 U.S.C. §3583; and an order of mandatory restitution, pursuant to 18 U.S.C. §3663A.  The defendant is obligated to pay

1

any applicable interest or penalties on fines and restitution not timely made, and a $100 special assessment.  Count Two carries a maximum penalty of 10 years of incarceration.

2.   The parties agreed that the government would limit their allocution as to Count Two of the information to a concurrent sentence with Count One.  ECF 86 ¶5.  The plea was a very timely plea despite the amount of time from the date of his arrest to the date of the plea.  Mr. Young was never presented with a more favorable plea than the present one and, in fact, this plea was substantially more favorable than any other plea.

3. Mr. Young has been incarcerated in this case from the date of his arrest on June 26, 2019, so the defendant has presently been incarcerated for almost forty-six (46) months.  He has been incarcerated at DC Jail under the harshest of conditions both as to the Covid Pandemic and under in humane conditions as found by the United State Marshals Service after investigation of the DC Jail to living conditions and sanitary standards.  Not only was Mr. Young very much isolated for much of his stay at DC jail, he in fact had COVID for a period of time.  Compounding the harshness of his incarceration above are two facts.  The first is that Mr. Young has only been outdoors a handful of times in the last four years.  The second is that Mr. Young has not had any visitors come to the jail since the time of COVID even though his family is in the District of Columbia, a period of now well over three years.

4.   The defendant has had a hard and unfair life in his upbringing.  His lack of a father hurts even now as he does know where he lives or even if he is currently employed.  He has last spoke to his father several years ago.  His mother cannot work and has chronic health concerns.  Mrs. Young reportedly suffers from heart problems and is "in and out of the hospital a lot" due to fluid buildup.

5. His home was far from ideal as his siblings were verbally and physically aggressive towards each other. The defendant's brother and sister also used marijuana regularly. Regarding mental health issues among family members, the defendant stated his mother's side of the family suffers from mental health problems, and they all take psychotropic medication. The defendant described the neighborhood where he grew up to be crime-ridden and he noted he witnessed a lot of violence. ECF 86 ¶65-66.

6. The defendant has been plagued by substance abuse that have made his mental problems even worse. "The defendant reported a history of alcohol, marijuana, K2 (synthetic marijuana), cocaine, fentanyl, Oxycodone and Percocet. He stated he first tried alcohol at age 20 and drinks occasionally in a social setting. He never felt his alcohol use was excessive. The defendant began using marijuana at age 21 and was using the "drug a few times a day" up until his arrest for the instant offense." The defendant started using cocaine at age 16 and was using "a lot" (exact quantity unknown) daily, up until his arrest for the instant offense. He was using Oxycodone and Percocet from the age of 17 and took two to three pills a day "a few times" leading up until his arrest." ECF 86 ¶75.

7. Worse yet, substance abuse problems are still as an issue getting drugs in DC Jail is not difficult. "The defendant advised he has continued to abuse illicit substances while in DC Jail to include K2, fentanyl, and opioids. When asked about his continued substance abuse, the defendant voiced he "can't help it."" ECF 86 ¶75.

8. The defendant did not report a history of drug treatment. He feels substance abuse treatment would be helpful. He is not currently receiving any drug treatment. The defendant noted the jail is aware of his drug problems and just tells him to stop using illicit substances. ECF 86 ¶76.

9. Also by being in the DC Jail and not in the federal system, he has been on lockdown for much of his time with little to no outdoor time, but more importantly has not been avail himself of any meaning programs as recommended by Probation.  The time he spent at the jail has not been just extraordinarily difficult but has been wasted time in terms of education, rehabilitation, or addressing any of his problems in any meaningful fashion.  Both doctors that have interviewed him in this case as well as the Probation Office have recommended substance about treatment.  ECF 86 ¶73a,73c,115

10. Worse still, the conditions at DC Jail were considered to be so inhumane by the United States Marshal for the District of Columbia, that it transferred a substantial number of DC Jail inmates to Lewisburg, PA, but did not include Mr. Young.

11. Compounding this under the First Step Act, he will not be getting the practical benefits of rehabilitation.  The First Step Act has the additional good time credit potential which will not be available to Mr. Young.

12.  The probation office has recommended five different programs in the federal prisons to address his rehabilitation by focusing on Sex Offender Treatment Program, Residential Drug Abuse Program (RDAP), Challenger Program, Mental Health Step Down Unit Program and the Federal Prisons Industries Program.  These programs address the main problems in Mr. Young's life that have not been addressed at DC Jail.  He has had no substantial help on any of these areas for well over three years.  ECF 86 ¶114-118.

13.  There is hope for the defendant as has worked in the past.  He has worked at a senate building for At Your Service (AYS), a catering company, where he obtained the job through a temp agency in March of 2019. The defendant earned approximately $15 per hour and

worked 40 hours per week.  Before that the defendant worked other jobs from 2012 through 2019.  ECF 86 ¶81-85.

14.  We concur with the recommendations of the presentence writer that the defendant is unable to pay any fine or restitution as he has little in the way of financial resources as noted in the final presentence report from which the presentence writer concluded it appears that he has no ability to pay a fine.  ECF 86 ¶62.

15.  The Probation office determined that the defendant is not able to pay a fine in this case as he has no funds.  ECF 86 ¶88,92.  We submit that it is doubtful that he will have funds at any time in at least the next 10 years or so.  Since Mr. Young is clearly an indigent person and cannot pay a fine, we move the Court that the additional assessments under 18 U.S.C. §3014(a) and 18 U.S.C. §2259A, not be ordered in this case. ECF 86 ¶11.  We agree that restitution is appropriate and mandatory in this matter under 18 U.S.C. §2259.  The practical issue in this matter is that the defendant is without funds at this point in time and he will continue to be without funds for a long time as noted above.  We move at the Court not set a schedule of payments at this time as there is no way to determine the ability, if any, of Mr. Young to pay restitution upon release or even during his stay in prison.  We suggest that the Court leave it to the probation office in the district in which Mr. Young will reside upon release to determine an appropriate schedule that can be met by the defendant.

16.  There is no evidence to suggest that the defendant willfully impeded or obstructed the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction. ECF 86 ¶25.

17. The defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea and made no additional statements regarding the offense. ECF 86 ¶26.

18. The severity of his incarceration to date we submit has been unusual and substantially more difficult because of difficulty of the Covid era, the substandard conditions at DC Jail and the lack of any meaningful programs.

19. In sum, we submit that given all the above, a total of fifteen years (15) years of incarceration would be fair and equitable in light of all the facts and circumstances in this case with the sentence for count two to runs concurrently.

WHEREFORE, we pray that the Court order the above followed by a period of supervised release with any appropriate conditions it deems appropriate.

Respectfully submitted,

/s/ *Richard S. Stern*
_____
RICHARD S. STERN
DC Bar No. 205377
932 Hungerford Drive
Suite 37A
Rockville, MD 20850
301-340-8000
rssjrg@rcn.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically served all counsel of record on March 24, 2023.

/s/ *Richard S. Stern*
_____
RICHARD S. STERN